## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO
## ALBUQUERQUE DIVISION

| | |
|---|---|
| **SPERIDIAN TECHNOLOGIES, LLC**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. _____ |
| **BALASUBRAMANI S. BHASKARAN**, | ) ) ) **JURY DEMANDED** |
| Defendant. | ) ) |

## COMPLAINT

For its Complaint against Defendant Balasubramani S. Bhaskaran ("Bhaskaran" or "Defendant"), Plaintiff Speridian Technologies, LLC ("Speridian") alleges that:

## NATURE OF ACTION

1. Speridian brings this action to recover damages resulting from breaches of certain restrictive covenants that Defendant accepted as a term of his employment with Speridian.

2. The parties executed the Employment Agreement, a copy of which is attached as **Exhibit A**, on July 5, 2018 (the "Speridian Agreement"). The Speridian Agreement engaged Defendant as a Senior Consultant for Speridian and its technology clients. Although Defendant's employment remained at-will, under the Speridian Agreement, Defendant agreed to observe restrictive covenants, including reasonable non-competition and non-solicitation provisions that prohibited Defendant from performing similar consulting services for Speridian's competitors, clients, or entities affiliated with employment services companies for a period of two years after his departure.

3. Shortly after tendering his resignation from Speridian in February 2022, Defendant secured a position with a competitor and began providing identical technology consulting services

for the same client and in the same location. Speridian notified Defendant that he was violating the restrictive covenants he agreed to observe. Yet, Defendant continued to perform such consulting services in direct violation of the Speridian Agreement.

4. Defendant owes contractual duties to Speridian, and he is indisputably breaching those duties by continuing to work as a technology consultant for the same client and on behalf of Speridian's competitor. Accordingly, Speridian asks that this Court: (1) find Defendant has breached the reasonable contractual duties he owes to Speridian under the Speridian Agreement; and (2) award Speridian damages for the harm that Defendant's breaches and wrongful conduct have caused, and continue to cause, to Speridian.

## PARTIES AND RELEVANT NONPARTIES

5. Speridian is a citizen of California, Delaware, and New Mexico. It is organized under the laws of Delaware and maintains its principal place of business at 2400 Louisiana Blvd. NE, Bldg. 3, Albuquerque, New Mexico 87110. Speridian's sole member, Speridian Global Holdings, LLC, is a limited liability company organized in California.

6. Bhaskaran is an individual residing in Kentucky who, upon information and relief, resides at 8000 John Davis Dr., Apt. 709, Frankfort, Kentucky 40601.

7. Latitude 36, Inc. ("Latitude") is an inactive-converted Tennessee corporation with a former principal place of business at 810 Crescent Centre, Suite 120, Franklin, Tennessee 37067.

8. Harvey Nash, Inc., ("Harvey Nash") is a Delaware corporation with a principal place of business at 9111 Cross Park Dr., Ste. D200, Knoxville, Tennessee 37923.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), because the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue for Speridian's claims for damages and equitable relief is proper in this Court pursuant to the Speridian Agreement, which provides that "any litigation shall be brought in the state or federal courts of the State of New Mexico." (Ex. A ¶18). Defendant agreed to personal jurisdiction in this Court under the same Agreement. (Id.)

## RELEVANT FACTS AND BACKGROUND

**Speridian's Business and Protectable Interests.**

11. Speridian is a global information technology company that provides its clients with bespoke businesses-to-business technology solutions, consulting, and systems management services. Speridian also provides its clients with market-leading technology solutions, including on-site hardware maintenance and software management and support.

12. Speridian invests substantial resources into providing its technical support and consulting staff with specialized, comprehensive, and industry-leading training. This training supplies Speridian's employees with a deep understanding of its products, methodologies, trade secrets, and other valuable confidential or proprietary information. Speridian invests significant time, money, and resources into training its employees so that they may faithfully represent the company and capably serve its clients.

13. In particular, Speridian invested considerable time, money, and resources into developing Defendant as a principal technology consultant and training him to serve Speridian clients as a specialist in Siebel enterprise software. For reference, Siebel is a computer programming language and customer relationship management system that is used by Speridian software engineers to develop custom Software As A Service (SAAS) solutions for Speridian's clients. Speridian provided Defendant with particularized training on Siebel systems and specifically prepared him to maintain the integrated computer and software systems used by the Commonwealth of Kentucky – the key client account at issue in this case.

14. Speridian not only invested in Defendant's training and professional development as an expert programmer, technology consultant, and Siebel specialist, it assisted Defendant by sponsoring his immigration status through the United States H-1B Visa program.

15. Speridian's industry is highly competitive, and others in the information technology industry typically require technical consultants to agree to post-employment covenants that restrict employees' ability to compete with their former employers for a reasonable amount of time. To protect its valuable business interests, Speridian requires its technology support and consulting staff to sign such agreements that contain reasonable post-employment restrictive covenants.

**Defendant's and the Related Parties' Contractual Obligations.**

16. On July 5, 2018, Speridian and Defendant entered into the Speridian Agreement whereby Defendant became a Senior Consultant and a member of Speridian's client relationship management and technical consulting team. (*See* Ex. A). The term of Defendant's employment was open ended and, notwithstanding the Speridian Agreement's covenants, the nature of his employment was at-will. (Ex. A ¶¶4, 11).

17. The Speridian Agreement provides, without limitation, that Speridian would maintain ownership of its intellectual property and over any discoveries, enhancements, improvements, or similar creations made by Defendant in the course of or related to the provision of services to Speridian's clients. (Id. ¶14).

18. Key to this action, the Speridian Agreement also provides, in relevant part, that:

> During the term of this Agreement and for 24 months after the end of the employment relationship (whether Employer or Employee initiated the termination), Employee agrees that he/she shall not in any individual or representative capacity (e.g. as a principal, employer, stockholder, partner, agent, consultant, independent contractor, or employee): []
>
> > (a) directly or indirectly provide, solicit or advise another of the opportunity to provide, any services to a client where Employee previously provided services to the client on

4

>> behalf of the Employer or was otherwise introduced through Employer; or
> (b) directly or indirectly, retain or solicit for Employee or for another party, the services of any of the Employer's employees or others introduced through Employer.

(Id. ¶8) (the "Non-Compete Provision"). The Non-Compete Provision further provides that "introduced through Employer" means "where a client, employee, contractor, other individual came to the attention of Employee in any manner through Employer." (Id.) It defines "Client" to include "any affiliates, customers or clients of the Client." (Id.)

19. Further, the Speridian Agreement provides that it "shall inure to the benefit of and shall be binding on the parties, the successors and assigns of Employer and the heirs and personal representatives of Employee." (Id. at 18).

20. Additionally, the parties agreed that, in the event Defendant breached certain provisions of the Speridian Agreement, including the Non-Competition Provision, Speridian would "suffer irreparable harm and money damages would be an inadequate remedy, entitling [Speridian] to seek injunctive relief." (Id. ¶16).

21. On or around June 14, 2019, Speridian and Latitude entered into a Consulting Services Agreement under which Speridian agreed that Defendant would be placed on-site in an office belonging to the Commonwealth of Kentucky, one of Latitude's clients. Under the Consulting Services Agreement, Defendant provided technology solutions and consulting services to the Commonwealth of Kentucky as an official representative of Speridian's technical consulting staff, albeit through Latitude's third-party contract with the State (the "Consulting Services Agreement," a copy of which is attached hereto as **Exhibit B**).

22. More specifically, Speridian agreed to "assign qualified personnel with the proper skill levels and experience to ensure that the Services shall be fully performed[.]" (Ex. B §1.2).

The "Services" to be provided included all services described in the "Addendum 'A'" attached to and incorporated by reference in the Consulting Services Agreement. (Id. §1.1).

23. Addendum A to the Consulting Services Agreement between Speridian and Latitude named the Commonwealth of Kentucky as the "Client," Defendant as the assigned Speridian "Consultant," and it described Defendant's job duties as "Siebel Developer." (Id. at Addendum A).

24. The Consulting Services Agreement and its Addendum A included reasonable restrictions and protections that, without limitation, imposed non-solicitation terms, confidentiality obligations, and proprietary and business information protections for the overlapping relationships between Speridian, Latitude, Defendant, and the Commonwealth of Kentucky. (Id. §§4, 6).

25. At some point after the Consulting Services Agreement was executed, Harvey Nash acquired Latitude and assumed all of its outstanding contractual rights and obligations, including the Consulting Services Agreement with Speridian and the Commonwealth of Kentucky.

26. Following the acquisition, the Commonwealth of Kentucky renewed its contract with Harvey Nash, which allowed for Defendant to continue as Speridian's on-site information technology consultant. The renewed Consulting Services Agreement included an updated Addendum A that reflected the same terms, but revised Defendant's hourly rate of pay. (**Exhibit C**). The renewed agreement and its updated Addendum A, like the earlier versions of the addendum, included non-solicitation obligations, confidentiality terms, and proprietary and business information protections. The renewed Consulting Services Agreement and Addendum A reflected that the renewed term for Defendant to provide technical consulting services was July 1, 2021 through June 30, 2022, with the possibility of additional extensions. (Id.)

**Defendant Resigns from Speridian and Violates the Agreement by Joining the Commonwealth of Kentucky as a Direct Employee.**

27. On Tuesday, February 15, 2022, Defendant tendered his resignation and two-week's notice to Speridian via email (**Exhibit D**, the "Resignation Email").

28. Defendant's Resignation Email plainly stated he had "accepted a new opportunity and look[ed] forward to the new direction of [his] career." (Id.)

29. In a return email dated February 18, 2022, Speridian accepted Defendant's resignation, effective February 28, 2022. (Id.)

30. Notably, in telephone conversations following his resignation, Defendant conveyed to Speridian's representatives that he had resigned for a higher salary with another company. Additionally, Defendant represented that he was not joining the Commonwealth of Kentucky as a direct employee, but rather was considering a position with a health insurance provider.

31. Speridian later became aware that Defendant actually joined a competitor that also contracts with Harvey Nash to provide information technology consulting services to the Commonwealth of Kentucky. Speridian came to understand that Defendant's new job involved the provision of identical technology consulting services to the same client and it involved the same technological systems and customer relationship management software that Defendant was responsible for overseeing under the Speridian Agreement and Consulting Services Agreement.

32. After learning Defendant had joined a competitor and was providing the same technology consulting services to the same client – a direct violation of the Non-Compete Provision – Speridian's Chief Legal Officer circulated a letter to Defendant on June 5, 2023, a copy of which is attached hereto as **Exhibit E** (the "June 5 Letter"). The June 5 Letter reminded Defendant that, under the Speridian Agreement, Defendant agreed he would "not provide any services to any clients of Speridian, or any clients of Speridian's clients, to which you provided

services while you were employed with Speridian or to which you were introduced through Speridian" for a "period of two years after your last day of employment with Speridian[.]" (Ex. E at 1).

33. Specifically, the June 5 Letter stated that the restrictive covenants in the Speridian Agreement prohibited Defendant from "leaving Speridian to perform services for the Commonwealth of Kentucky, either directly or through any other vendor." (Id.) The June 5 Letter also conveyed Speridian's belief that Defendant's new employment "clearly breached" the Speridian Agreement and he "continue[d] to be in breach" of the restrictive covenants. (Id.) The letter reiterated Defendant's two-year commitment not to, directly or indirectly, solicit Speridian's other employees or otherwise breach the Non-Compete Provision and other terms in the Speridian Agreement. (Id.)

34. The June 5 Letter also provided express notice that Speridian was "strongly considering taking legal action" to enforce the Speridian Agreement and to address the "substantial harm" Defendant's breach caused and continued to cause. (Id.) Notwithstanding its firm position, Speridian offered to resolve the dispute amicably and without litigation, if possible, and requested that Defendant contact the Chief Legal Officer no later than Friday, June 9, 2023 to discuss amicable settlement possibilities. (Id.)

35. The June 5 Letter unequivocally placed Defendant on notice that he was violating, at minimum, the Non-Compete Provision of the Speridian Agreement and that continuing in his new employment constituted an ongoing breach of the restrictive covenants he agreed to observe.

36. Defendant's response to the June 5 Letter, or lack thereof, made clear that he has no intention of complying with the contractual obligations that he owes to Speridian. Following receipt of the June 5 Letter, Defendant did not resign from his new position.

37. Upon information and belief, Defendant remains employed in the same position and thereby continues to violate the contractual obligations and duties he owes to Speridian under the Speridian Agreement, including the Non-Compete Provision.

38. As a result of Defendant's willful and knowing breaches, Speridian has suffered, and continues to suffer, at minimum, loss of revenue from cancellation of the Consulting Services Agreement and the loss of business opportunity and prospective business advantage with the Commonwealth of Kentucky, one of Speridian's most reliable, long-time clients.

### COUNT I – BREACH OF CONTRACT

39. Speridian incorporates the allegations contained in paragraphs 1 through 38 as if set forth fully herein.

40. The Speridian Agreement, which includes the Non-Compete Provision, is a valid, legally enforceable contract that imposes reasonable restrictive covenants and other binding obligations on Defendant.

41. Defendant materially breached, without limitation, the Non-Compete Provision and related contractual duties that he owed to Speridian under the Speridian Agreement.

42. Defendant's material breaches caused, and continues to cause, substantial and material harm to Speridian in the form of, at minimum, Speridian's loss of revenue from cancellation of the Consulting Services Agreement and the loss of business opportunity and prospective business advantage with the Commonwealth of Kentucky.

43. As a result of Defendant's ongoing breaches of the Speridian Agreement, Speridian has incurred, and continues to incur, substantial monetary damages amounting to no less than $250,000.00, exclusive of interest, costs, and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Speridian respectfully requests that this Court:

A.  Enter judgment against Defendant finding that Defendant breached the contractual duties he owed to Speridian;

B.  Award Speridian damages for Defendant's continuing breach of the Speridian Agreement in an amount to be determined at trial by a jury that is no less than $250,000.00;

C.  Award Speridian the reasonable costs, including attorneys' fees, it incurs in obtaining the requested relief; and

D.  Grant any other further and general relief the Court may deem just and proper.

Dated: December 28, 2023

Respectfully submitted,

*/s/ Susan G. Chappell*
Susan G. Chappell (No. 8936)
Speridian Technologies, LLC
2400 Louisiana Blvd. NE, Bldg. 3
Albuquerque, New Mexico 87110
(505) 363-5247
susan.chappell@speridian.com

and

Mary Taylor Gallagher (*pro hac vice* forthcoming)
Gabriel B. Ragsdale (*pro hac vice* forthcoming)
GULLETT SANFORD ROBINSON & MARTIN PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
mtgallagher@gsrm.com
gragsdale@gsrm.com

*Attorneys for Plaintiff Speridian Technologies LLC*